[L. A. No. 6393.   Department Two.—January 12, 1921.]

## J. D. ROBINS, Respondent, v. HARRY J. V. BLAKE et al., Appellants.

[1] APPEAL—FORECLOSURE OF THIRD MORTGAGE—SATISFACTION OF PRIOR MORTGAGES—INSUFFICIENCY OF EVIDENCE—ENTRY OF NEW DECREE —LACK OF AUTHORITY.—Where it is necessary to reverse a judgment of foreclosure of a third mortgage because of the insufficiency of the evidence to support the findings that the first and second mortgages had been satisfied, the appellate court cannot direct the trial court to enter a new judgment foreclosing the first and second mortgages, where it is not clear from the evidence as to what payments had been made on the first and second mortgages, and the rights of the various parties were not passed upon on the basis that such mortgages were still unsatisfied.

APPEAL from a judgment of the Superior Court of Imperial County. Franklin J. Cole, Judge. Reversed.

The facts are stated in the opinion of the court.

Wright & McKee for Appellants.

Scarborough & Forgy and S. M. Reinhaus for Respondents.

WILBUR, J.—This is an appeal by the Ehlen Land Company, a corporation, and P. W. Ehlen from a judgment foreclosing a mortgage executed by defendants Harry Blake and Lenore Blake to Francis A. Blake and by him assigned to the plaintiff. Harry and Lenore Blake executed two mortgages for four thousand dollars each to P. W. Ehlen. These two mortgages were both dated April 3, 1914, but in one of them it was recited that it was "subject to a mortgage of even date herewith between the same parties to secure four thousand dollars." The trial court decided that these two four thousand dollar mortgages were satisfied and discharged on the tenth day of September, 1915, and by reason thereof that plaintiff's mortgage, which was originally a third mortgage, had become a first mortgage upon the premises. The cross-complaint of P. W. Ehlen seeking to foreclose the two four thousand dollar mortgages was denied and the premises ordered sold to satisfy the lien of the plaintiff's mortgage. The only dispute in the case is with reference to the nature and validity of the transaction of September 10, 1915. It appears without conflict that at the time of the latter transaction W. W. Johnson was the owner of the second four thousand dollar mortgage and that W. H. Davis was the owner of the first four thousand dollar mortgage. The second mortgage had been assigned to W. W. Johnson in exchange for nineteen acres at Escondido. The first mortgage had been assigned to Davis as collateral security for an obligation of P. W. Ehlen. These assignments were shown by the records and were testified to by the witnesses, and there is no conflict in the testimony, notwithstanding which the court found that "while the Ehlen Land Company was the owner of said [second] note and mortgage, the defendants, Harry J. V. Blake and Lenore M. Blake, his wife, executed a deed of all their interest in the said real property described in said mortgage securing said note, to the Ehlen Land Co., a corporation, defendant herein, in full satisfaction thereof; . . . that thereby said note and mortgage was fully paid and satisfied; that there is at this

time nothing due and unpaid on said note and mortgage."
With reference to the first mortgage the finding is somewhat
different, namely, that the property was so transferred "at
the request of said cross-complainant and that said promissory
note and mortgage were thereby fully paid and satisfied."
These findings and the conclusions arising therefrom are not
sustained by the evidence. The transaction of September 10,
1915, was agreed upon between Harry J. V. Blake and Alfred
T. Burch. Burch was at that time the general manager of
the Ehlen Land Company and P. W. Ehlen was the president
thereof. Harry Blake testified that P. W. Ehlen represented
to him that Burch was his agent in the matter. For the pur-
poses of this appeal we must accept this testimony as true,
although it is directly contradicted by Burch. It therefore
appears that at the time the transaction occurred Burch was
representing both the corporation and P. W. Ehlen. Harry
Blake testified on that subject as follows: "Q. With refer-
ence to the satisfaction of these two . . . mortgages, did you
ask either Mr. Ehlen or Mr. Burch for satisfaction of these.
mortgages at that time? A. And mentioned just as you have
there, no, I did not. Q. Did you make a demand upon the
Ehlen Land Company for satisfaction? A. I was getting
satisfaction there, that is what I was there for, and I got it.
That is what I supposed I was getting. Q. You did not re-
ceive satisfaction on the mortgages though? A. No, I had
no writing, . . . Q. You were dealing with Mr. Burch as agent
for Mr. Ehlen, why didn't you demand a satisfaction of these
mortgages, if that was your arrangement? A. I don't know
why. When I went in there at that meeting, it was to get
out from under this whole thing, and we did arrange and it
was satisfactory to me, and I did go out and turn him over
my ranch at that time."

He also testified concerning the negotiation and the transac-
tion of September 10, 1915, so far as relates to the outstanding
mortgages: "I says, 'I want to get out from under this load.
I have had all I want of it, and if there is any way for us
to clean it up I would like to do so,' and Mr. Burch says,
'What would you like to do?' and I says, 'If you will clean
up everything and give me a certain amount of cash,' I asked
them a thousand dollars, and also to extend to Mrs. Blake
a twelve months on the interest on her ranch, that is on the
south eighty, that I would deed over to him, lock, stock and
barrel, all the north eighty, which was all I had at that time,

because I had deeded the south eighty to my wife, and Mr. Burch says, 'How about these bills?' and I says there are such and such things that I cannot recall now; I think there were water bills—in fact, I was back on a great many things, and finally it got down where Mr. Burch said, 'We will give you,' after figuring, 'between seven and eight hundred dollars,' I disremember, and I says, 'That is perfectly satisfactory; you are going to take care of all these back obligations, and extend Mrs. Blake twelve months on her place,' and they said, 'Yes, that is all right,' and I think there was some document drawn up at that time, and we had to have them signed, . . . '' He also testified on cross-examination, with reference to the third mortgage, that his brother, who was present at the opening of the negotiations, stated: ''When you are in this thing you want to take care of that personal note of mine, and Mr. Ehlen says, 'When Mr. Burch gets here, we will take care of that.' ''

Mr. Blake also testified as follows: ''Q. Were these notes that were made at the same time the two four thousand dollar notes? A. Well, I said at the time, 'Why don't we make them in one.' Q. No, I mean at the time you were at Orange there, was anything said? [The negotiations of September 10, 1915, were at Orange.] A. There was nothing said in regard to it. It was understood that when I closed up my transaction that I had finished and was free. . . . Q. Then it was your understanding of the deal made with Mr. Ehlen— A. I made the deal with Mr. Burch. He was the man that acted on the whole thing, and it was on his say so that Mr. Ehlen acquiesced in everything that was put to him at the time, and he said he was not handling the business, but that this was his agent and doing all the work. Q. And at that time, Mr. Blake, it was your understanding then that you were to be let out clear? A. Certainly. Q. And these three mortgages, one to your brother, and the two four thousand dollars notes, were to be taken care of by the Ehlen Land Company? A. Certainly, with the understanding that I turn it over instead of having them go to the expense of foreclosing on it, and I would get out of it.''

It is clear from the foregoing that there was no direct negotiations between the parties with reference to the satisfaction of the two four thousand dollar mortgages, and if we accept the testimony of Harry Blake concerning his ''understanding'' and his ''intentions,'' as his recollection of the

substance of the conversation between the parties on September 10, 1915, such testimony at most only establishes an agreement on the part of the Land Company to take care of the outstanding mortgages. It is clear, then, that giving this testimony the utmost credit, it did not establish an agreement on the part of the Land Company to surrender notes and mortgages which at the time were owned by others. Nor was anything said by either party to indicate that it was the intention of the Land Company and P. W. Ehlen to give priority to plaintiff's mortgage. Mr. Burch, the other party to the negotiations, denied that any agreement whatever was entered into with reference to the two four thousand dollar mortgages, except that the Land Company agreed to pay the overdue interest thereon. He testified that it was in consideration of this agreement, and of a credit of $1,250 on an unsecured note and a payment of seven hundred dollars cash, that the mortgagor transferred to the Land Company the land and personal property thereon, the latter subject to a chattel mortgage. This testimony, as to what was agreed upon is in harmony with the purpose of the interview which was sought by Harry Blake, and is in accord with what was actually done in pursuance thereof, and on close analysis is not in conflict with Harry Blake's testimony.

[1] It will be necessary to reverse the judgment because the findings are not supported by the evidence. Appellant asks that the trial court be directed to enter a new judgment foreclosing the first and second mortgages. That cannot be done. It is not clear from the evidence as to what payments have been made upon the first and second mortgages. The rights of these various parties were not passed upon by the trial court on the basis that the four thousand dollar mortgages were still unsatisfied. Upon a new trial of the action the rights of the various parties can be determined, if the evidence thereupon adduced again requires the conclusion that there was no satisfaction of the four thousand dollar mortgages. Even if Burch was acting as agent for P. W. Ehlen, as well as for the Ehlen Land Company, in the transaction of September 10th, that fact would not justify giving the third mortgage priority over the first and second mortgages.

Judgment reversed.

Lennon, J., and Sloane, J., concurred.